UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.                                          No. 2:19-CR-20008

JAY DON GIFFORD                                                                         DEFENDANT

## OPINION AND ORDER

Defendant Jay Don Gifford was indicted on February 6, 2019. The indictment charged Gifford with two counts production of child pornography, two counts transportation of child pornography, and one count commission of a felony offense against a minor by a registered sex offender. On August 13, 2019, Gifford pled guilty to Count One, charging him with production of child pornography in violation of 18 U.S.C. § 2251(a) and (e), and Count Seven, charging him with commission of a felony offense against a minor under 18 U.S.C. § 2251(a) by a registered sex offender in violation of 18 U.S.C. § 2260A. On December 19, 2019, Gifford was sentenced to 300 months of imprisonment on Count One and 120 months on Count Seven, to run consecutively, and to supervised release for a term of life. On the day of sentencing, the Court reserved ruling on the issue of restitution pursuant to 18 U.S.C. § 3664(d)(5). The Court held a hearing on March 10, 2020, during which the Government presented evidence to support the amount of restitution requested and the parties had an opportunity to be heard. For the reasons set forth below, the Court finds that restitution in the amount of $24,500 must be distributed to the victims as outlined below. An amended judgment incorporating this amount will be entered separately.

On October 18, 2018, investigators received a CyberTip that Defendant used an email to upload child pornography to a Dropbox account. Investigation revealed Defendant was a

1

registered sex offender with a 2011 conviction for lewd and lascivious molestation of a child in the Circuit Court of Columbia County, Florida. Investigators obtained a search warrant to search Defendant's registered address but discovered he did not live there. Once investigators obtained the correct address, Defendant consented to a search of his bedroom and told investigators he viewed child pornography on his phone and laptop and showed investigators multiple images of himself and two minor children. It was discovered that Defendant, at some point, had lived at the house with two minors. During this time, Defendant sexually assaulted the two minor victims and took photos and videos of the assaults.

Investigators located 10,037 images and 1,362 videos of child pornography on Gifford's electronic devices. The Presentence Investigation Report ("PSR") included 338 pages of victim impact statements. Of the multiple victims, eleven, identified here by the monikers used for the child pornography "series" in which each was victimized, made requests for restitution: John Does I-V, Lighthouse 1, Sweet Sugar Pink-Mya, Sweet Sugar White-Pia, Jenny, Teal & Pink Princess-Raven, and PinkHeart Series-Tori. Although the two minors Defendant assaulted were Defendant's only hands-on victims for these two counts of conviction, neither requested any amount of restitution.

Days before the sentencing hearing, the Government informed the Court of its intention to keep restitution open pursuant to 18 U.S.C. § 3664(d)(5). The request was granted because a new AUSA had been appointed to the case. It appears to the Court that the previous AUSA did not do any work to determine the restitution amounts the Government would request and left the new AUSA without the proper means to make the restitution request during the sentencing hearing. The restitution section of the judgment was held open for a period of 90 days, the maximum time

allowed under the statute. Close to the ninety-day deadline, the Government informed the Court they had the restitution amounts and requested a hearing.

At the hearing, the Government put into evidence Government's Exhibits 1-11. These exhibits contained the victim statements and restitution requests for the eleven victims that requested restitution. These eleven victims were people depicted in some of the child pornography Defendant's possessed. The victims requested the following amounts in restitution from Defendant: John Does I-IV, $3,000 each; Maureen, $10,000; Mya, $5,000; Pia, $5,000; Jenny, no less than $3,000; Raven, no less than $3,000; and Tori, no less than $3,000.

Title 18 U.S.C. § 2259(a) provides that a district court shall order restitution for offenses involving the sexual exploitation of children and child pornography. *Paroline v. United States*, 572 U.S. 434, 443 (2014). Restitution is proper to the extent defendant's offenses proximately caused the victim's losses. "Even mere possessors of child pornography cause proximate harm to victims of child pornography." *United States v. Beckmann*, 786 F.3d 672, 682 (8th Cir. 2015) (citing *Paroline*, 572 U.S. at 454). Because "child pornography victims suffer continuing and grievous harm as a result of knowing that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse [they] endured, all persons who reproduce, distribute, or possess child pornography play a part in sustaining and aggravating this tragedy." *Id.* (internal citations and quotations omitted).

Restitution under § 2259 should be ordered in an amount that reflects the defendant's relative role in the causal process that underlies the victim's general losses. *Id.* The Supreme Court in *Paroline* listed a number of factors for courts to consider when determining the relative causal significance of defendant's conduct to those losses. *Paroline*, 572 U.S. at 460. The factors include:

3

> The number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.* These factors are "rough guideposts for determining an amount that fits the offense" and should not be used as a rigid formula. *Id.* The Eighth Circuit has upheld restitution awards ranging between $2,500-$3,500. *United States v. Bordman*, 895 F.3d 1048, 1057 (8th Cir. 2018).

In determining the restitution amounts to be ordered in this case, the Court was limited by the evidence the Government presented. The only evidence the Government proffered during the hearing were the victim impact statements, many of which included reports detailing the victims' future medical costs. (Govt. Ex. 1-11). The Government did not make any specific arguments for an amount Defendant should pay to each victim, or provide evidence concerning the number of other defendants who had committed child pornography offenses involving these victims. There is no question that Defendant was a proximate cause of some of each victim's losses because possession of child pornography aggravates victims' losses. The determination of the restitution amount is the most difficult part of the analysis. The Court has looked at the evidence presented and focused on the *Paroline* factors, including the number of images Defendant possessed of each victim. Although the restitution awards are lower than the victims' requests, this is to account for the lack of evidence presented regarding many factors, the age of the documents, the possibility other defendants have paid restitution (or will be required to pay in the future), and the Defendant's causal role.

For the 8-Kids series of images that victimized John Does I, II, III, IV, and V, Defendant possessed 21 images but did not have a role in the production or distribution of the images. Government's exhibits 1-5 demonstrate the John Doe victims' losses and the need for further medical treatment. Because of the *Paroline* factors and those factors discussed above, the Court finds restitution in the amount of $2,500 per victim for John Does I-V is appropriate.

For the Lighthouse I (Maureen) series, Defendant possessed 10 images from this series but did not have a role in the production or distribution of the images. Because of the *Paroline* factors and those factors discussed above, the Court awards the Lighthouse I (Maureen) victim $2,000 in restitution.

For Sweet Sugar Pink-Mya, Defendant possessed 10 images and there was no evidence Defendant had a role in production or distribution. Because of the *Paroline* factors and those factors discussed above, the Court awards the victim of this series $2,000 in restitution.

For Sweet Sugar White-Pia series, Defendant possessed 10 images and there was no evidence Defendant had a role in production or distribution of these images. Because of the *Paroline* factors and those factors discussed above, the Court awards the victim of this series $2,500.

For the Jenny series, the Court awards $3,000 to the victim. Defendant possessed 212 images and there was no evidence Defendant had a role in the production or distribution. Of the victims awarded restitution, Defendant had the most images of this victim, and although the Court considered all relevant factors, the number of images was the largest factor in the restitution award.

For the Raven series, the Court awards $1,500. Defendant possessed 5 images and there was no evidence Defendant had a role in the production or distribution. The only evidence the Government presented was a letter from the attorney representing Raven describing the child

pornography and the impact it has had on Raven. There has been no professional evaluation preformed on Raven, but the attorney stated the cost of such exam is $20,500. Based on the cost of the exam and the factors considered in the other restitution awards, $1,500 is an appropriate restitution award for this victim.

For the Tori series, the Court awards $1,000. Defendant possessed 4 images and there was no evidence Defendant had a role in the production or distribution. The only evidence the Government presented was a letter from the attorney representing Tori describing the child pornography and the impact it has had on Tori. There has been no professional evaluation preformed on Tori, but the attorney stated the cost of such exam is $20,500. Based on the cost of the exam and the factors considered in the other restitution awards, $1,000 is an appropriate restitution award for this victim.

IT IS THEREFORE ORDERED that Defendant pay restitution in the amount of $24,500 to the victims as listed in this order. A lump sum payment of $24,500 is due immediately. If the defendant is unable to pay the full amount immediately, any unpaid financial penalty shall be paid by the defendant during his term of imprisonment at a rate of up to 50% of the defendant's available funds, in accordance with the Inmate Financial Responsibility Program. During residential reentry placement, payments will be 10% of the defendant's gross monthly income. The payment of any remaining balance shall become a special condition of supervised release, with the remaining balance to be paid in monthly installments of $100 or 15% of the defendant's net monthly household income, whichever is greater, with the entire balance to be paid in full one month prior to the end of the period of supervised release. If the defendant fails to pay the full restitution owed, each recipient is to receive an approximately proportional allotment of the restitution paid. An

amended judgment will be entered separately for the purpose of including the restitution amount on the judgment.

IT IS SO ORDERED this 17th day of March, 2020.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE